[Cite as *State v. Jones*, 2014-Ohio-1634.]

<span style="color:red">**[Please see vacated opinion at 2014-Ohio-382.]**</span>

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99703**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LISA JONES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-568908 and CR-12-568910

**BEFORE:** Stewart, J., Jones, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 17, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH    44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Adrienne E. Linnick
            Daniel T. Van
Assistant County Prosecutors
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

ON RECONSIDERATION[1]

MELODY J. STEWART, J.:

{¶1} Defendant-appellant Lisa Jones entered guilty pleas in two separate cases:  in CR-568908, she pleaded guilty to a second-degree felony count of aggravated arson and four, fourth-degree felony counts of arson; in CR-568910, she pleaded guilty to one count of menacing by stalking.  The cases arose from Jones's harassment of, and threats made to, her ex-boyfriend and setting fire to his house that, in turn, burned four houses that surrounded it.  In this appeal, she complains that the court should have transferred her cases to the mental health docket; that her guilty pleas were involuntary; that the court should have merged the arson counts for sentencing; and that the court abused its discretion by prohibiting her from participating in prison programs that might entitle her to an early release.

I

{¶2} Jones first argues that her cases should have been transferred to the court's mental health docket in light of an assessment performed by the court psychiatric clinic that declared that Jones "meets criteria for transfer to the   Mental Health Court."

A

---

[1]The original announcement of decision, *State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-382, released February 6, 2014, is hereby vacated.  This opinion, issued upon reconsideration, is the court's journalized decision in this appeal.  *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

**{¶3}** Rule 30.1(A) of the Local Rules of the General Division of the Common Pleas Court of Cuyahoga County establishes a mental health docket for cases "where the defendant has a confirmed serious mental illness" — defined in the rule as "within the previous six months prior to arraignment, there is a clinical diagnosis of a severe mental illness with a psychotic feature." In a case where the mental health of the defendant is not determined until after arraignment, assignment to the mental health docket is discretionary. *See* Loc.R. 30.1(C)(2); *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 30.

**{¶4}** Jones's mental health evaluations were performed after her arraignment. A sanity evaluation concluded that Jones suffered from bipolar disorder at the time of her offense, but that her mental disease "did not prevent her from knowing the wrongfulness of the alleged behavior." A competency evaluation conducted at the same time found her competent to stand trial and found also that, although Jones was not at that time presenting with symptoms of psychosis, she was a candidate for transfer to the mental health docket. During sentencing, defense counsel told the court that Jones had been placed on medication while in jail and that her condition had been stabilized, giving her "a very sound grasp of her situation and the problems that she's experienced." Defense counsel also told the court that while he believed Jones was a "prime candidate" for the mental health docket, the court "has the discretion to do a lot of things."

**{¶5}** Jones never made a formal motion to have her case transferred to the mental health docket. And when she did raise that forum as an alternative to the regular

criminal docket, she did so only at the time of sentencing after having entered guilty pleas as part of a plea bargain. By that point, transfer was admittedly discretionary with the court.

{¶6} Nothing in the record shows that the court abused its discretion by not transferring the case to the mental health docket. Although Jones's evaluations determined that she was a candidate for transfer to the mental health docket, the evaluation determined also that she was competent to stand trial and her mental health issues did not prevent her from knowing that her conduct was wrong. Additionally, the court appeared unconvinced that Jones would benefit from having her case transferred to the mental health docket, saying that it did not sympathize with "people who don't take the medication they're given * * *." The court noted that Jones made a "conscious choice to not follow the doctor's direction, to drink, to not take your medication." Reasonable people might disagree with the court's decision after considering the mental health evaluations, but that kind of disagreement does not amount to an abuse of discretion.

B

{¶7} Jones next argues that if we find that counsel's failure to file a formal motion to have the case transferred to the mental health docket constitutes a waiver of that request, we should find that counsel was ineffective.

{¶8} An ineffective assistance of counsel claim will lie only when it has shown that both (1) the performance of defense counsel was seriously flawed and deficient, and

(2) the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{**¶9**} We have no basis for concluding that defense counsel's failure to file a motion to transfer the case to the mental health docket was the direct cause of the court's refusal to order the transfer. The psychiatric report was prepared after arraignment, so at all events a transfer request based on the contents of that report would have been discretionary with the court. The report showed that Jones's mental health stabilized considerably once she began taking her medication. Defense counsel noted the same thing based on his own interaction with Jones. To the court, this appeared to mean that Jones could have avoided criminal involvement had she been compliant with her medication, but that Jones made a "conscious choice" to not take her medication and instead consume alcohol. Given the court's statements, we cannot say that it would have been predisposed to order transfer to the mental health docket had a formal motion for transfer been filed, so there is no showing that but for defense counsel's failure to file a motion, Jones's case would have been transferred to the mental health docket.

II

{**¶10**} We next consider Jones's argument that her guilty plea was involuntary because she was not clearly advised of the elements of proof required for aggravated arson, it being her belief that the structure she set fire to was not an occupied house but more of a "tool shed."

**{¶11}** "Crim.R. 11(C)(2)(a) requires the court to determine whether a defendant has an 'understanding of the nature of the charges,' but that requirement does not require the court to inform the accused of the actual elements of the charged offense during the plea colloquy." *State v. Woodard*, 8th Dist. Cuyahoga Nos. 94672 and 94673, 2011-Ohio-104, ¶ 4. Instead, the court must look to the circumstances of the case to determine whether the defendant understands the charges to which she is pleading. *See State v. Esner*, 8th Dist. Cuyahoga No. 90740, 2008-Ohio-6654, ¶ 3.

**{¶12}** Jones pleaded guilty to a single count of aggravated arson in violation of R.C. 2909.02(A)(2). That section charged that she, by means of fire, knowingly caused physical harm to an occupied structure. Jones maintains that she did not set fire to an occupied structure as evidenced in the sentencing transcript where she states that the victim "had gutted the house * * *. The plumbing was gone, the kitchen was gone and everything. There was nothing in that house. It was a tool shed." Jones argues that these statements show that she could not have understood that she was pleading guilty to burning down an occupied structure. Jones apparently believes that the term "occupied structure" means a habitation or where someone currently lives. Such is not necessarily the case.

**{¶13}** As applicable here, R.C. 2909.01(C) defines occupied structure in pertinent part as any house, building, or other structure that is maintained as a permanent or temporary dwelling, regardless of whether it is temporarily unoccupied or whether any person is actually present. Other provisions in the statute reference habitation, overnight

accommodation, and the presence or likely presence of a person. But regardless of how Jones characterizes the victim's property, it is clear that the house satisfies the statutory requirement for aggravated arson. Jones's argument that she did not understand that she was pleading guilty to setting an occupied structure on fire is without merit.

{¶14} Jones also complains that the court misled her about the potential consequences of her plea by advising her that she "could receive community control for up to five years." She maintains that this advisement was misleading because the court refused to order a presentence investigation report, so community control sanctions were unavailable as a sanction under authority of R.C. 2951.03(A)(1). ("No person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court.")

{¶15} Crim.R. 11(C)(2)(a) requires the court to inform the defendant of the "maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." The court has no obligation to inform a defendant that community control is an available sanction. Jones was apparently eligible for community control, and the court took Crim.R. 11(C)(2)(a) a step further than it had to by telling Jones that she "could" receive a community control sanction. Although Jones argues that the court's statement was false and misleading because the court had no intention of imposing a community control sanction because it did not order a presentence investigation report, the

advisement did not amount to any kind of promise that community control would be imposed. As with other sentencing decisions, community control is discretionary with the court. The court's decision to not order a presentence investigation report and, in turn, not sentence Jones to a community control was a decision within the court's discretion and did not involve any of the advisements required under Crim.R. 11(C).

III

{¶16} Jones pleaded guilty to one count of aggravated arson in violation of R.C. 2909.02(A)(2) and four counts of arson in violation of R.C. 2909.03(A)(1). Jones argues that these were allied offenses because the fire started with one single act — she set fire to one house and the fire spread to four adjacent houses.

{¶17} When a defendant's conduct results in the commission of two or more "allied" offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A). Offenses are "allied" and must be merged for sentencing if the defendant's conduct is such that a single act could lead to the commission of separately defined offenses, but those separate offenses were committed with a state of mind to commit only one act. *See State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48-50. Merger is a sentencing issue, so the defendant bears the burden of establishing her entitlement to the protection of the Allied Offenses Statute, R.C. 2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

**{¶18}** In support of her argument, Jones cites *State v. Harrison*, 8th Dist. Cuyahoga No. 75294, 1999 Ohio App. LEXIS 5908 (Dec. 9, 1999). Harrison set fire to two cars and those fires spread to adjacent houses. The state charged Harrison with 14 counts of aggravated arson relating to the inhabitants of those houses under R.C. 2909.02(A)(3).[2] Employing the test set forth in *State v. Blankenship*, 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988), for determining whether offenses are allied, we held that Harrison acted with a single animus in creating a risk of serious harm to the occupants of the houses. In reaching that decision, we relied on *State v. Hedrick*, 8th Dist. Cuyahoga No. 57844, 1990 Ohio App. LEXIS 5647 (Dec. 20, 1990), in which we found that four counts of aggravated arson relating to the burning of a single house with four inhabitants must merge for sentencing. As Jones notes, other precedent from this court holds to the same effect. *See, e.g., State v. Fields,* 8th Dist. Cuyahoga No. 88668, 2007-Ohio-3661 (the state conceded that four counts of aggravated arson relating to the burning of furniture in one suite of an apartment building that spread to the other three suites in the building must merge for sentencing); *State v. Parnell*, 8th Dist. Cuyahoga No. 38756, 1979 Ohio App. LEXIS 10104 (May 24, 1979) ("firebomb" that caused damage to both units in a duplex constituted a single act requiring merger of two counts of aggravated arson under R.C. 2909.02)

**{¶19}** The cases cited by Jones are distinguishable in that at least half of them analyze conduct relative to an occupied structure under the aggravated arson statute. But

---

[2] We note that the definition of R.C. 2909.02(A)(3), as stated in *Harrison,* is incorrect.

even these cases are no longer viable precedent in favor of merging arson or aggravated arson counts as they relate to individual persons affected by a defendant's conduct. In *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, the Ohio Supreme Court refused to merge six aggravated arson counts under R.C. 2909.02(A)(1) that stemmed from a single fire that created a risk of harm to a separate persons. Citing *State v. Jones*, 18 Ohio St.3d 116, 117, 480 N.E.2d 408 (1985), for the proposition that "this state's aggravated vehicular homicide statute * * * allow[s] convictions for separate violations 'for each person killed as the result of a single instance of [the defendant's] reckless operation of his vehicle'" *id.* at ¶ 48, the court held "by analogy with *Jones*" that Franklin's conduct "caused six offenses of dissimilar import because six different people were placed at risk. For this reason, appellant's argument fails." *Id.* This holding is now understood to mean that "when an offense is defined in terms of conduct towards another, then there is dissimilar import for each person affected by the conduct." *State v. Piscura*, 2013-Ohio-1793, 991 N.E.2d 709, ¶ 17 (8th Dist.). Thus, we have recently held that a defendant setting one fire created a substantial risk of harm or injury to four children, and could be separately punished for the harm. *See State v. Collins*, 8th Dist. Cuyahoga No. 95415, 2011-Ohio-3241, ¶ 21.

{¶20} *Franklin's* "dissimilar import" analysis controls the outcome of this assignment of error. Jones, in addition to pleading guilty to the single count of aggravated arson under R.C. 2909.02(A)(2), also pleaded guilty to four counts of arson in violation of R.C. 2909.03(A)(1). That section states that no person, by means of fire or

explosion, shall knowingly "[c]ause, or create a substantial risk of, physical harm to any property of another without the other person's consent[.]" Jones's guilty plea acknowledged that her single act damaged not only the victim's property (an occupied structure), but four neighboring houses that are the property of others. Because there were five separate houses damaged by Jones's single act, there were five acts of harm that could be separately charged and punished as aggravated arson under R.C. 2909.02(A)(2) and arson under R.C. 2909.03(A)(1).

IV

{¶21} The two remaining assignments of error relate to sentencing issues. A

{¶22} The court sentenced Jones to an eight-year term for aggravated arson; 18 months on each of the four arson counts; and 18 months on the menacing by stalking counts. All of the counts were run consecutively for a total of 15 and one-half years in prison.

{¶23} R.C. 2929.14(C)(4) requires a sentencing judge to make three distinct findings before imposing consecutive sentences, in addition to whatever findings the judge makes with respect to the purposes and goals of sentencing. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Second, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find that at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶24}** Under R.C. 2953.08(A)(4), a defendant can challenge a sentence as being "contrary to law" if the court failed to make the findings required by R.C. 2929.14(C)(4). *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 12. We do not require literal compliance with R.C. 2929.14(C)(4), so the court need not state its findings word-for-word with the statute, although that is the preferable way of doing so. But the court must make separate and distinct findings to show compliance with the statute. *Id.* at ¶ 17.

**{¶25}** The sentencing transcript shows that the court did not make the third finding under R.C. 2929.14(C)(4)(a)-(c). The court said nothing about whether Jones committed her offenses while awaiting trial; that the harm caused by her multiple offenses was so great or unusual that no single prison term could adequately reflect the seriousness of her conduct; or that her history of criminal conduct showed that consecutive sentences were necessary to protect the public from future crime by Jones. Although the court noted in its first finding that consecutive sentences were necessary to protect the public and to

punish Jones, the "necessary to protect the public from future crime" finding under section (C)(4)(c) must be made relative to the defendant's criminal history. We therefore find that the court failed to comply with R.C. 2929.14(C)(4) so the imposition of consecutive sentences was contrary to law.

B

{¶26} After the court sentenced Jones, defense counsel asked the court whether Jones would be "eligible for participating in programs and so on?" The court replied, "I'm not gonna' oppose her participation in any programs if she'd like to take them for credit." However, in the sentencing entries entered in both cases, the court stated its opposition to Jones being placed in any form of early release or transitional control. Jones complains that these sentencing entries conflict with statements the court made at sentencing and in any event failed to comply with R.C. 2929.19(D) that requires the court to state its reasons why it opposes placement.

{¶27} R.C. 5120.032(A) authorizes the Department of Rehabilitation and Correction to establish intensive programs that prisons focus on, among other things, educational achievement, vocational training, substance abuse, and community service. An eligible prisoner who successfully completes an intensive program may have a prison sentence reduced by the department. R.C. 2929.19(A)(1)(b). The sentencing court may disapprove of a prisoner's participation in an intensive program, but must make "a finding that gives its reasons for its recommendation or disapproval." R.C. 2929.19(D).

**{¶28}** The state argues that the court did not definitively state at sentencing that it would not oppose Jones's participation in any programs that would entitle her to prison credit. A fair reading of the sentencing transcript tends to show that the court was not ambivalent about Jones going into the programs, just that it was unsure whether she qualified for the programs, stating: "I don't oppose her taking them, but I can't control — I don't know for certain * * * what's eligible or not with an F-2."

**{¶29}** In any event, we do agree with the state that regardless of any ambiguity at sentencing, the court did not state any reasons for opposing Jones's participation in intensive programs as required by R.C. 2929.19(D). There being no other indication that Jones had been rendered ineligible under R.C. 5120.032(B)(2), we sustain this assignment of error also and remand with instructions for the trial court to reconcile any ambiguity between its statements and the journal entry, and for the court to make the required finding that gives reasons for disapproving Jones's participation in any early release or transitional control programs if the court so opposes.

**{¶30}** This cause is affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR