[Cite as *State v. Jones*, 2016-Ohio-688.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 102260

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LISA JONES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-568908-A and CR-12-568910-A

**BEFORE:** Celebrezze, J., Jones, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 25, 2016

**ATTORNEY FOR APPELLANT**

Carmen P. Naso
Milton A. Kramer Law Clinic
Case Western Reserve University
11075 East Blvd.
Cleveland, Ohio 44106

**FOR APPELLANT**

Zeb Khan
Matthew Martin
Legal Interns
Milton A. Kramer Law Clinic
Case Western Reserve University
11075 East Blvd.
Cleveland, Ohio 44106


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Daniel T. Van
        Frank Romeo Zeleznikar
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant Lisa Jones ("Jones") brings this appeal challenging the trial court's sentences for arson, aggravated arson, and menacing by stalking. Specifically, Jones argues that she was denied effective assistance of counsel at her resentencing hearing. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant criminal proceedings arose after Jones harassed and threatened her ex-boyfriend and set fire to his house. The fire that Jones set also burned four houses surrounding her ex-boyfriend's house.

{¶3} In CR-12-568908-A, Jones pled guilty to one count of aggravated arson, in violation of R.C. 2909.02(A)(2), and four counts of arson, in violation of R.C. 2909.03(A)(1). In CR-12-568910-A, Jones pled guilty to one count of menacing by stalking, in violation of R.C. 2903.211(A)(1).

{¶4} On February 20, 2013, the trial court sentenced Jones to an eight-year prison term for aggravated arson, 18 months for each of the four arson counts, and 18 months for menacing by stalking. The trial court ordered Jones to serve all of the counts consecutively, for a total of 15 and one-half years in prison at the Ohio Reformatory for Women.

{¶5} In *State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-382, Jones challenged the trial court's sentence, arguing (1) the trial court did not make the R.C. 2929.14(C)(4) findings before imposing consecutive sentences, and (2) the trial court's

statements at the sentencing hearing conflict with the court's sentencing entries regarding its opposition to her being placed in any form of early release or transitional control. *Id.* at _ 1. This court held that the trial court complied with R.C. 2929.14(C)(4) and made the findings necessary to impose consecutive sentences. *Id.* at _ 23. However, this court held that the trial court erred by not stating any reasons for opposing Jones's participation in intensive programs as required by R.C. 2929.19(D), as there was no indication that Jones had been rendered ineligible for intensive program prisons under R.C. 5120.032. *Id.* at _ 28. Accordingly, this court remanded the matter to the trial court for resentencing.

**{¶6}** In *State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-1634, upon reconsideration, this court vacated its decision in *State v. Jones*, 2014-Ohio-382, and held that the imposition of consecutive sentences was contrary to law:

> The sentencing transcript shows that the court did not make the third finding under R.C. 2929.14(C)(4)(a)-(_). The court said nothing about whether Jones committed her offenses while awaiting trial; that the harm caused by her multiple offenses was so great or unusual that no single prison term could adequately reflect the seriousness of her conduct; or that her history of criminal conduct showed that consecutive sentences were necessary to protect the public from future crime by Jones. Although the court noted in its first finding that consecutive sentences were necessary to protect the public and to punish Jones, the "necessary to protect the public from future crime" finding under section (C)(4)(_) must be made relative to the defendant's criminal history. We therefore find that the court failed to comply with R.C. 2929.14(C)(4) so the imposition of consecutive sentences was contrary to law.

*Id.* at _ 25.

**{¶7}** Furthermore, this court restated that the trial court erred by not stating any reasons for opposing Jones's participation in intensive programs as required by R.C. 2929.19(D). *Id*. at _ 29. On remand, this court instructed the trial court "to reconcile any ambiguity between its statements and the journal entry, and for the court to make the required finding that gives reasons for disapproving Jones's participation in any early release or transitional control programs if the court so opposes." *Id*.

**{¶8}** On October 28, 2014, the trial court held a resentencing hearing. Jones's defense counsel attempted to call her minister to address the court. The trial court denied defense counsel's request, ruling "[t]his is a resentencing on a technical issue that requires me to make findings. Since victims are not invited to participate today, I'm not taking any outside comments." Jones informed the trial court that she participated in the anger management, anger resolution, total forgiveness, healthy relationships, and dog programs in prison. Jones informed the trial court that she has five tickets for disobeying an order and that she has gone to "the hole" twice for disobeying orders. The trial court incorporated all of the prior proceedings — including both the change of plea hearings and sentencing hearings — from CR-568901 and CR-568910.

**{¶9}** The trial court resentenced Jones to a prison term of eight years for aggravated arson and 18 months for each of the four arson counts. The trial court chose to "give [Jones] the benefit of the doubt" and ran the aggravated arson and arson counts concurrent to each other. Furthermore, the trial court reduced Jones's sentence for menacing by stalking from 18 months to 15 months and ordered the sentence consecutive

to the aggravated arson and arson counts, for a total of eight years and 15 months at the Ohio Reformatory for Women. The trial court ordered up to three years of postrelease control on all counts. Jones's defense counsel objected to the trial court's postrelease control order, arguing that it violated the separation of powers "act" under both the United States Constitution and the Constitution of the State of Ohio. The trial court credited Jones with time served.

{¶10} Regarding its R.C. 2929.14(C)(4) findings, the trial court stated:

The Court further finds consecutive sentences are necessary as multiple offenses between the two cases were committed as part of one or more courses of conduct, and the harm caused by these offenses was so great or unusual that no single prison term will adequately reflect the seriousness of your conduct.

Again, the Court had incorporated its prior remarks and findings regarding Jones's sentence.

{¶11} Furthermore, the trial court neither made a recommendation nor any findings regarding Jones's placement in transitional control. The trial court stated that it only opposes transitional control in "the most unusual cases." The trial court left the issue of Jones's placement in transitional control or intensive prison program ("IPP") to the warden.

{¶12} Jones filed the instant appeal assigning one error for review:

I. Jones was denied due process of law under the 6th and 14th Amendments to the United States Constitution and Ohio Constitution I Section 10 when her counsel failed in his duty to investigate and provide necessary and relevant mitigation, resulting in ineffective assistance of counsel at her resentencing.

**II. Law and Analysis**

{¶13} In her sole assignment of error, Jones argues that she was denied effective assistance of counsel during the proceedings below.  Jones specifically argues that her trial counsel was ineffective in failing to investigate and introduce mitigation evidence at the trial court's resentencing hearing.   For the reasons that follow, we disagree.

{¶14} Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).   Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).   Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different.   *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

{¶15} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different.   *Strickland* at 687-688, 694; *Bradley* at paragraphs two and three of the syllabus.

{¶16} In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance.  *Strickland* at 689.   "A reviewing court will

strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶17} In the instant matter, Jones's counsel was appointed on October 15, 2014, to represent her at the trial court's October 28, 2014 resentencing hearing. At resentencing, counsel informed the trial court that he was unable to access some of the information in the case: "although I have tried to access the information in the case that had previously been before this Court, I have not been able to do so because of the [sic] not authorized at that particular juncture." Counsel did not specify what information he was unable to access.

{¶18} Jones argues that defense counsel (1) failed to investigate and rebut the victims' testimony and information that the trial court relied on during the resentencing hearing, (2) failed to file a motion to transfer the matter to the mental health court for resentencing, and (3) failed to access her mental health information and seek to mitigate her sentence based on a change in her mental health status.

{¶19} Jones has the burden of demonstrating that her counsel rendered ineffective assistance by failing to conduct an adequate investigation. *State v. Hunter*, 131 Ohio St.3d 67, 82, 960 N.E.2d 955 (2011), citing *Strickland* at 687.

{¶20} After reviewing the record, we cannot say that the performance of Jones's counsel was deficient because there is no indication as to what counsel could have

presented at resentencing regarding the victims' statements and Jones's mental health that the trial court was not already aware of.

## A. Victims' Statements

{¶21} First, Jones argues that counsel's assistance was ineffective because he failed to investigate and rebut information that the prosecution and victims provided to the trial court at the original sentencing hearing.

{¶22} During her original sentencing hearing, the prosecutor informed the trial court that the fire set by Jones affected five different residences. The prosecutor presented photographs depicting the extent of the damage to the residences. Furthermore, the prosecutor introduced insurance documents detailing the victims' total losses and deductible payments. The prosecutor emphasized that Jones set these fires very early in the morning and that there were people inside most of the houses that were damaged. Two of Jones's ex-boyfriend's daughters detailed the impact that Jones's actions had on their family. However, Jones disputed the number of victims, number of houses damaged, and the extent of the damage caused by the fire, alleging that the victims provided false information to the trial court.

{¶23} The first daughter ("daughter 1") stated that the family owns six houses on the street where the incident took place. Daughter 1 stated that three of the houses were damaged by the fire set by Jones, and that there were people in two or three of the houses. Daughter 1 stated that the other three houses were across the street. Daughter 1

explained that Jones has repeatedly affected her family in a "very negative way" and that the fire was "devastating":

> My childhood home, with all its fine memories unexpectedly being burned to ashes; and my own rental property that I spend the last several years working hard to achieve the American dream of home ownership being completely ruined and fire damaged beyond a livable condition.

However, Jones disagreed with daughter 1's statement, alleging that "the memories are there in their mind. There was nothing in that house. [The house] was a tool shed." Finally, Jones insinuated that daughter 1 provided false information to the trial court because she disliked her:

> [she] did not like me from jump street. And by me being on alcohol, an alcoholic, honestly, I wasn't on my medication, you know, it gave her the ammunition against me.

{¶24} The second daughter ("daughter 2") stated that Jones's ex-boyfriend was staying with her aunt on the morning of the fire. However, Jones disagreed, alleging that the ex-boyfriend "has a police statement stating he was not with his aunt" and that "he was living with his new girlfriend that he had dumped me for." Daughter 2 stated that several calls were made to the police about Jones's conduct. However, Jones disagreed:

> And then they called the police numerous of times. When you call the police, there's a record of it. She ca — [the ex-boyfriend's daughter] called the police one time that me and [the ex-boyfriend] was having a disagreement, as relationships do, and she came across the street and escalated the argument.

Daughter 2 further stated that her dad, Jones's ex-boyfriend, is the type of person who would open his door and let the "neighborhood winos" stay at his house when it was cold outside. However, Jones disagreed:

He did not open his door to the winos. My daughters are here, and they can testify that I was living there with [her ex-boyfriend], with his mother, in the house next door.

**{¶25}** Jones argues that the trial court accepted the prosecutor's documentation and the victims' statements as true, even though the evidence was neither credible nor admissible. Furthermore, Jones argues that defense counsel's failure to object to or explain any of the circumstances or inaccuracies in the victims' statements constitutes ineffective assistance of counsel under *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.E.2d 471 (2003). In *Wiggins*, the United States Supreme Court recognized that an attorney's failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel. *Id.* at 521-522; *see State v. Dean*, Slip Opinion No. 2015-Ohio-4347, ¶ 284.

**{¶26}** In the instant matter, there was no showing that defense counsel did not review or investigate the prosecution's exhibits and the victims' statements from the original sentencing hearing. Furthermore, there is no indication that Jones's allegations have mitigating value. Nothing in the record indicates what evidence could have been presented regarding the victims' statements to the trial court at Jones's sentencing hearing. Establishing that the victims provided false information to the trial court would require proof outside the record, such as title or tax records demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal. *See State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 217; *see also State v. Madrigal*, 87 Ohio St.3d 378, 391, 721 N.E.2d 52 (2000).

**{¶27}** Accordingly, we reject this ineffectiveness claim.

### B. Mental Health

**{¶28}** Jones further argues that defense counsel's performance was deficient, because counsel failed to file a motion to transfer the matter to the mental health court for resentencing, and failed to discuss her mental health. Furthermore, Jones contends that had her defense counsel accessed and introduced evidence regarding the change in her mental health status at resentencing, she would not have received the maximum sentence for aggravated arson.

**{¶29}** In *Porter v. McCollum*, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), the United States Supreme Court held that counsel's failure to uncover and present any evidence of the defendant's mental health or mental impairment, family background, or military service at capital sentencing was ineffective assistance of counsel. *Id.* at 40. The court noted that counsel "did not even take the first step of interviewing witnesses or requesting records." *Id.* at 39. Furthermore, the court held that the defendant was prejudiced by counsel's deficient performance:

> This is not a case in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge." *Strickland*, supra, at 700, 104 S. Ct. 2052, 80 L. Ed. 674. The judge and jury at Porter's original sentencing heard almost nothing that would humanize Porter or allow them to accurately gauge his moral culpability. They learned about Porter's turbulent relationship with Williams, his crimes, and almost nothing else. Had Porter's counsel been effective, the judge and jury would have learned of the "kind of troubled history we have declared relevant to assessing a defendant's moral culpability." *Wiggins*, supra, at 535, 123 S. Ct. 2527, 156 L. Ed. 2d 471.

*Id.* at 41.

**{¶30}** In *Wiggins*, the United States Supreme Court held that counsel "fell short of *** professional standards" for not expanding their investigation beyond the presentence investigation report and one set of records they obtained, particularly "in light of what counsel actually discovered" in the records. *Id*. at 524-525. The court explained its holding in light of the *Strickland* performance standards:

> *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the "constitutionally protected independence of counsel" at the heart of *Strickland*. 466 U.S. at 689, 80 L.Ed.2d 674, 104 S.Ct. 2052. We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." Id. at 690-691, 80 L.Ed.2d 674, 104 S.Ct. 2052. A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." *Id*. at 691, 80 L.Ed.2d 674, 104 S.Ct. 2052.

*Id*. at 533. The court emphasized that the mitigating evidence regarding defendant's "excruciating" life history, which counsel failed to discover and present, was powerful. *Id*. at 537. Instead of hearing this evidence, the only mitigating factor that the jury heard was that the defendant had no prior convictions. *Id*.

**{¶31}** In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court held that defendant's constitutional right to effective assistance of counsel was violated when counsel "failed to conduct an investigation that would have uncovered extensive records graphically describing [defendant's] nightmarish childhood." *Id*. at 395. Counsel incorrectly thought that the

records were inaccessible under state law. *Id.* Furthermore, counsel failed to introduce evidence that the defendant was "borderline mentally retarded" and did not advance beyond the sixth grade. *Id.* at 396.

{¶32} In the instant matter, we initially note that the scope of the resentencing hearing was limited to determining (1) whether consecutive sentences were necessary under R.C. 2929.14(C)(4), and (2) whether the trial court opposed Jones's participation in any early release or transitional control programs under R.C. 2929.19(D).

{¶33} The trial court incorporated all of the prior proceedings — including the information regarding Jones's mental health and the mental health evaluations — into the record at the resentencing hearing. Thus, unlike *Porter*, *Wiggins*, and *Williams*, the trial court was aware of Jones's mental health issues — both at the time of the original sentencing hearing and at resentencing.

{¶34} Jones submitted to mental health evaluations, including both a sanity and a competency evaluation, after her arraignment. The sanity evaluation concluded that Jones suffered from bipolar disorder at the time of her offense, but that her mental disease "did not prevent her from knowing the wrongfulness of the alleged behavior." Furthermore, the competency evaluation concluded that Jones was competent to stand trial and found that, although Jones was not presenting with symptoms of psychosis at the time of the evaluation, she was a candidate for transfer to the mental health docket.

{¶35} During the original sentencing hearing, Jones's counsel informed the trial court that Jones had been placed on medication while in jail and that her condition had

been stabilized. Counsel further stated that the person he initially met with in jail was a "different person" than the person standing in court. Counsel informed the trial court that Jones's family has a history of drug and alcohol abuse. Counsel stated that the evaluations indicate that Jones has been stabilized and has made progress on the medication that she is taking. Finally, counsel stated that Jones is a "prime candidate" for the mental health court.

{¶36} At the original sentencing hearing, the trial court was not convinced that Jones would benefit from having her case transferred to the mental health docket, stating that Jones's mental health disorder is not an excuse for her behavior, and that it does not sympathize with people who make a conscious choice to disregard a doctor's recommendation and not take medication as prescribed. Furthermore, the trial court noted that Jones made a "conscious choice to not follow the doctor's direction, to drink, to not take your medication."

{¶37} We further note that on direct appeal, this court held that Jones's counsel's failure to file a motion to transfer the case to the mental health court at the original sentencing was not ineffective assistance of counsel:

> We have no basis for concluding that defense counsel's failure to file a motion to transfer the case to the mental health docket was the direct cause of the court's refusal to order the transfer. The psychiatric report was prepared after arraignment, so at all events a transfer request based on the contents of that report would have been discretionary with the court. The report showed that Jones's mental health stabilized considerably once she began taking her medication. Defense counsel noted the same thing based on his own interaction with Jones. To the court, this appeared to mean that Jones could have avoided criminal involvement had she been compliant with her medication, but that Jones made a "conscious choice" to not take

her medication and instead consume alcohol. Given the court's statements, we cannot say that it would have been predisposed to order transfer to the mental health docket had a formal motion for transfer been filed, so there is no showing that but for defense counsel's failure to file a motion, Jones's case would have been transferred to the mental health docket.

*Jones*, 2014-Ohio-1634, at ¶ 9.

{¶38} At resentencing, defense counsel was presumably referring to Jones's medical records when he informed the trial court that he could not access information in the case. However, counsel did advise the trial court that Jones's mental health was improving with her new medication:

> That is the learning process in which [Jones is] getting better. This new medication is helping her. Obviously the articulation that she comes here today, and conciliation, not coming into this courtroom raising hell, being a hell raiser, things of that nature.
>
> But she comes in a conciliatory manner, saying, I have asked for and received the benefit of good treatment. It was a blessing in disguise, so to speak, that going to Marysville has given me this new release on life. It has given me perspectives.

{¶39} In addition to counsel's statements, Jones also discussed her mental health while speaking on her own behalf at resentencing. Jones claimed that she was not in a "state of right mind" during her change of plea hearing. Jones stated that she was grateful for the time she spent in prison because it allowed her to "get back into [her] mental therapy." Jones further stated that she was not taking the proper medication, either at the time she committed the offense or at the time of her change of plea hearing. Jones stated that her new medication has helped reduce her depression and nightmares

and helps with her bipolar disorder. Jones stated that she has received good medical attention and care in prison, and that she is stable.

**{¶40}** After reviewing the record, we cannot say that defense counsel rendered ineffective assistance of counsel by failing to file a motion to transfer the case to the mental health court and failing to show a change in Jones's mental health status. Based on the trial court's incorporation of the prior proceedings, the trial court had access to all of the pertinent information regarding Jones's mental health, the sanity and competency evaluations, her medication, and the progress that she has made during her time in prison. Furthermore, based on Jones's statements at resentencing, the trial court was aware of the alleged change in her mental health status and the progress she has made on her new medication.

**{¶41}** Jones argues that counsel — both at the original sentencing and resentencing hearings — showed a "lack of effort" similar to that of counsel in *Porter*, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398. Specifically, Jones argues that her counsel (1) failed to specify her mental issues at the time she committed the offenses and (2) failed to show how those conditions changed since she committed the offenses. This argument is entirely unsupported by the record. At her original sentencing hearing, Jones's counsel advised the trial court that she is stabilized, a "different person" from the time of her arrest, and making progress on her new medication. Furthermore, at resentencing, Jones's counsel advised the trial court that she "is getting better" and that the new medication is helping her.

**{¶42}** Accordingly, we reject this ineffectiveness claim.

## C. Prejudice

**{¶43}** Assuming, arguendo, that the failure of Jones's counsel to rebut the victims' statements and discuss her mental health was deficient, Jones cannot demonstrate that she was prejudice by defense counsel's alleged errors, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland*, 466 U.S. at 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d at paragraphs two and three of the syllabus, 538 N.E.2d 373.

**{¶44}** At the original sentencing hearing, the trial court sentenced Jones to an eight-year prison term for aggravated arson, 18 months for each of the four arson counts, and 18 months for menacing by stalking. The trial court ordered Jones to serve all of the counts consecutively, for a total of 15 and one-half years in prison. However, on remand, the trial court reduced Jones's sentence by (1) running the aggravated arson and arson counts concurrent to each other, and (2) reducing Jones's sentence for menacing by stalking from 18 months to 15 months. Jones's original sentence was reduced from a total of 15 and one-half years to 9 years, 3 months.

**{¶45}** We find no merit to Jones's argument that she would not have received the maximum sentence for aggravated arson if defense counsel had introduced evidence regarding the change in her mental health status at resentencing. First, the trial court had access to all of the relevant information regarding Jones's mental health at the time of resentencing. Second, Jones cannot demonstrate that the trial court's sentence for

aggravated arson would have been different if defense counsel had raised the issue of her mental health.

{¶46} At the original sentencing hearing, the trial court noted that there was a "four-month series of events" between the menacing by stalking offense and the arson, and that Jones "had a lot of time to plan." Furthermore, the trial court emphasized that Jones's arson was "quite extensive" and affected numerous properties. The trial court felt that there was more than enough evidence to justify the imposition of maximum consecutive sentences. The trial court stated that Jones's conduct constituted "the worse forms of the offense as charged here in both cases." The trial court further explained:

> The pattern of your motive and your consistent stalking of this family resulted in extreme financial loss and psychological damage. It resulted in financial loss to an entire neighborhood and placed safety forces in jeopardy as they responded to an emergency situation.

{¶47} Given the trial court's rationale for its original sentence, which it incorporated at resentencing, we cannot say that it would have reduced Jones's sentence for aggravated arson if defense counsel raised the issue of her mental health. Accordingly, Jones cannot meet her requirement of demonstrating prejudice under *Strickland*.

{¶48} Based on the foregoing analysis, we cannot say that Jones's defense counsel rendered ineffective assistance. Jones's sole assignment of error is overruled.

### III. Conclusion

{¶49} On remand from *State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-1634, the trial court held a resentencing hearing to determine: (1) whether

consecutive sentences were necessary under R.C. 2929.14(C)(4), and (2) whether the trial court opposed Jones's participation in any early release or transitional control programs under R.C. 2929.19(D).

{¶50} Jones's counsel did not render ineffective assistance of counsel by failing to investigate and rebut the victims' statements to the trial court at her original sentencing hearing. Nothing in the record indicates what evidence could have been presented regarding the victims' statements to the trial court at Jones's sentencing hearing. Furthermore, establishing Jones's claim that the victims provided false information to the trial court would require proof outside the record, which is not appropriately considered on a direct appeal.

{¶51} Jones's counsel did not render ineffective assistance of counsel by failing to discuss her mental health. By incorporating the prior proceedings at resentencing, the trial court had access to all of the pertinent information regarding Jones's mental health, her sanity and competency evaluations, her medication, and the progress that she has made during her time in prison. Furthermore, both counsel and Jones informed the trial court that she was making progress on her new medication.

{¶52} Finally, Jones cannot demonstrate a reasonable probability that but for counsel's failure to rebut the victims' statements and discuss her mental health at resentencing, the result would have been different.

{¶53} Accordingly, Jones's sole assignment of error is overruled, and the trial court's judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
FRANK D. CELEBREZZE, JR., JUDGE

LARRY A. JONES, SR., A.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY