[Cite as *State v. Carlson*, 2023-Ohio-372.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111534 |
| v. | : | |
| DANIEL CARLSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 9, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-660358-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Fallon Radigan, Assistant Prosecuting
Attorney, *for appellee.*

The Powers Law Firm, LLC, and John A. Powers, *for
appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Defendant-appellant Daniel Carlson appeals his sentence imposed by
the Cuyahoga County Court of Common Pleas, contending that his sentence
imposed pursuant to S.B. 201, the Reagan Tokes Law, was unconstitutional and that

he received ineffective assistance of counsel during sentencing. After a thorough review of the applicable law and facts, we affirm.

## I. Factual and Procedural History

{¶ 2} In May 2021, a Cuyahoga County Grand Jury returned a 22-count indictment against Carlson for conduct occurring between September 2019 through June 2021. The charges were as follows: pandering sexually oriented matter involving a minor (Counts 1, 13, 16); illegal use of minor in nudity-oriented material or performance (Counts 2, 3, 4, 5, 9, 14, 15, 18, 20, 21); compelling prostitution (Counts 6, 19); extortion (Counts 7, 17); importuning (Counts 8, 10, 11, 12); and tampering with evidence (Count 22).

{¶ 3} Carlson, a teacher and track coach in the Mayfield City School District, concealed his identity by suggesting that he was a student or a peer and used a social media application to message former students. Carlson engaged in a pattern where he would ask the victims to send photographs in exchange for money or gift cards. The requests began with asking for photos of just the victims' faces and he would send a small dollar amount. When the victims realized that Carlson followed through with his promises to send money, he would escalate the activity and ask for more explicit photos including nude photos and even videos of sex acts, and the compensation given to the victims increased. On one occasion, Carlson offered a victim $15,000 in exchange for sex, though it does not appear that Carlson ever met with any of the victims in person. Carlson spent approximately $39,050 on money and gift cards to send to the victims in exchange for photos and videos. The

investigators identified at least 23 victims, and 8 of those identified were under 18 years old; the youngest identified victim was 12 years old.

{¶ 4} Eventually, many of the victims informed Carlson that they wanted to stop, and he threatened them. Carlson also used information against the victims to ensure that his identity did not get out. He would tell the victims that he knew where they lived, what sports they played, and would threaten to post all the photos and videos they sent to him on social media if they did not continue sending them. He also threatened to tell the police. At sentencing, the state informed the trial court that it did not believe that any of the images were published or otherwise disseminated. Carlson allegedly broke the tablet containing the images and threw it in Lake Erie before he was arrested.

{¶ 5} Carlson accepted a plea deal and entered guilty pleas to pandering sexually oriented matter involving a minor (Count 1); compelling prostitution (Counts 6, 19); extortion (Counts 7, 17); attempted illegal use of minor in nudity-oriented material (Counts 9, 18, 20 as amended); importuning (Counts 10, 11, 12); pandering sexually oriented matter involving a minor (Count 13 as amended); attempted pandering sexually oriented matter involving a minor (Count 16 as amended); and tampering with evidence (Count 22). Counts 2, 3, 4, 5, 8, 14, 15, and 21 were nolled.

{¶ 6} The court imposed a minimum ten-year prison sentence, running Counts 1 and 6 consecutively and all others concurrently. The sentence for Count 1, the only second-degree felony, was imposed pursuant to S.B. 201, the Reagan Tokes

Law.  Carlson was advised that pursuant to Count 1, his prison sentence was 7 years but could be up to 10.5 years under S.B. 201.  Carlson was also ordered to register as a tier II sex offender.

{¶ 7} Carlson appeals his sentence, assigning two errors for our review.

1. As amended by S.B. 201, the revised code's sentences for first- and second-degree qualifying felonies violated the constitutions of the United States and the State of Ohio; accordingly, the trial court plainly erred in imposing a S.B. 201 indefinite sentence.

2. Trial counsel was ineffective when counsel provided the court with a confidential psychological report that indicated the appellant may be an above average risk to reoffend sexually.

## II. Law and Analysis

{¶ 8} In his first assignment of error, Carlson challenges his sentence that was imposed pursuant to the Reagan Tokes Law, enacted by S.B. 201.  Particularly, Carlson argues that the Reagan Tokes Law is unconstitutional, raising arguments that the law (1) violates his right to a trial by jury, (2) violates the separation-of-powers doctrine and, (3) violates due process requirements.

{¶ 9} As Carlson acknowledges, all of these constitutional challenges were resolved in this court's en banc decision, *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), that held that the Reagan Tokes Law was constitutional and did not violate a defendant's right to trial by jury, did not violate separation-of-powers principles, and did not violate due process requirements.  Finding that Carlson has not raised any arguments not already addressed in *Delvallie*, we overrule his first assignment of error.

{¶ 10} In his second assignment of error, Carlson argues that he received ineffective assistance of counsel. Carlson argues that because his trial counsel produced a report that the court found persuasive in sentencing, Carlson could have received a shorter prison sentence or even community-control sanctions in lieu of a prison sentence.

{¶ 11} At the recommendation of trial counsel, Carlson began mental health treatment services at Advanced Psychotherapy Services ("APS") in Wickliffe, Ohio. Among these services was a Sexual Behavior Evaluation ("SBE"), performed by Chelsea McGowan, a clinical counselor. According to the transcript, Carlson's records from APS, including the SBE, were provided to the state and the trial court for review, but are not in the record before us. On appeal, Carlson argues that his trial counsel was ineffective for providing the trial court with a copy of the SBE because the trial court referenced the SBE's findings several times during sentencing and cited the SBE as a reason for imposing consecutive sentences.

{¶ 12} To establish a claim of ineffective assistance of counsel, Carlson must demonstrate that his trial counsel's representation was deficient, and that the deficient performance was prejudicial. *State v. Jones*, 8th Dist. Cuyahoga No. 102260, 2016-Ohio-688, ¶ 14, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Weaver*, Slip Opinion No. 2022-Ohio-4371, ¶ 68. To establish that counsel was deficient, appellant must demonstrate that defense counsel's performance fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

To establish that counsel's deficient performance was prejudicial, appellant must demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998). A reviewing court must give great deference to counsel's performance in reviewing an ineffective-assistance-of-counsel claim. *Strickland* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69, citing *Bradley* at 141.

{¶ 13} R.C. 2929.13(D)(1) carries a presumption that first- and second-degree felonies are subject to a prison term, but under subsection (D)(2), the trial court may impose community-control sanctions in lieu of a prison term if certain findings are made. *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 29. If a sentencing court finds that (1) the offender has a lesser likelihood of recidivism based on the factors enumerated in R.C. 2929.12; and (2) pursuant to R.C. 2929.12, the offender's conduct was less serious than conduct normally constituting the offense, then a community-control sanction may be imposed in lieu of a prison sentence at the discretion of the sentencing court. R.C. 2929.13(D)(2). Carlson argues that the SBE, which his trial counsel provided, undermined the first finding because McGowan found that Carlson had an above-average risk of reoffending and the court relied heavily on this point in imposing a prison sentence and imposing consecutive sentences.

**{¶ 14}** Counsel's decisions relating to strategy are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 6. The extent of mitigation evidence presented at a sentencing hearing is generally a matter of trial strategy. (Citations omitted.) *State v. Tinsley*, 8th Dist. Cuyahoga No. 105551, 2018-Ohio-278, ¶ 17. If tactical or strategic trial decisions are unsuccessful, that does not generally constitute ineffective assistance of counsel. *Id.*, citing *State v. Cossack*, 7th Dist. Mahoning No. 08 MA 161, 2009-Ohio-3327, ¶ 36. It is clear from the record that Carlson's trial counsel introduced those records as mitigation. Carlson's counsel was attempting to demonstrate that Carlson had a lesser likelihood of recidivism because Carlson was so open to treatment:

> [TRIAL COUNSEL]: * * * The reason why we wanted to be able to provide the Court with the full history of his mental health, * * * was Mr. Carlson is a person who has been suffering, who has been battling his mental health diagnoses now for years.

(Tr. 73.)

> [TRIAL COUNSEL]: * * * [C]ertainly by committing himself to this ongoing treatment, his ongoing therapy, those are the ways that he can prove to the community how seriously he takes this.
>
> Certainly since the end of May, early June of last year, that's exactly what he's done. There hasn't been anything else for him to do other than to get to the root of his issues. That's why he has devoted himself to therapy, to counseling, to make sure that something like this never happens again, that certainly he has the tools in place to identify what was going on with him.

> \* \* \* [C]ertainly he has benefitted a great deal from his one-on-one counseling. I think it was the addition of the group counseling through APS that he was really able to get to the bottom of what was going on, to be able to speak with counselors, to speak with other individuals who are dealing with a similar addiction that he suffers from as well, and recognizing what that addiction is, what are those warning signs, and how to combat it.

(Tr. 76-77.)

{¶ 15} Carlson notes that his presentence investigation came to an opposite conclusion; that he was at a low risk of reoffending. A review of the record, however, indicates that trial counsel brought this dichotomy between the documents to the trial court's attention:

> [TRIAL COUNSEL]: Also, Your Honor, just in taking a look at the presentence investigation report, it also indicated that there was a low risk for recidivism in there as well. So that was also a determination made by the court probation department in making its recommendations.
>
> THE COURT: But not by his mental health professional.
>
> [TRIAL COUNSEL]: No, Your Honor. That's just from the court's probation department.
>
> THE COURT: Right.
>
> [TRIAL COUNSEL]: But certainly taking a look, that was one of the things that Ms. McGowan did indicate about his openness to that treatment and that is something that he has been engaging in since I believe it was December or January, engaging in the treatment specifically dealing with the sex-related offenses.

(Tr. 85.)

{¶ 16} The fact that the trial court ultimately gave more weight to the SBE submitted by Carlson's trial counsel as opposed to the community-control

department's presentence-investigation report does not demonstrate deficient, prejudicial conduct by Carlson's trial counsel.

{¶ 17} We further note that during sentencing, the trial court came to its own conclusion on recidivism separate from the SBE and the presentence-investigation report. The trial court noted that Carlson was regularly attending counseling while the events leading to his conviction occurred and never once mentioned these serious problems to his providers until after he was apprehended. The trial court noted that "I would suggest having a problem and not addressing it like alcohol or drugs puts it on the defendant as far as not — and statutorily, [R.C.] 2929.12 renders that person more likely to reoffend * * *." (Tr. 82.) The trial court also noted that even though this was Carlson's only criminal offense, the conduct went on for nearly two years.

{¶ 18} Carlson also provides numerous arguments suggesting that the trial court was not provided the appropriate context for interpreting the SBE and directs us to many government-sponsored and academic studies regarding sexual offenders who commit their offenses exclusively online. In lieu of providing statistics and outside media, Carlson's trial counsel submitted a substantial sentencing memorandum containing other materials aimed at mitigating Carlson's sentence. This memorandum contained substantial details about Carlson's past, his mental health struggles, and indeed contained many other details from the SBE intended to demonstrate the extent of Carlson's mental health problems. In addition to this, numerous letters of support from members of Carlson's family and the community

were submitted. "'*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.'" *State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837, ¶ 19, quoting *Wiggins v. Smith*, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Carlson's trial counsel submitted a substantial sentencing memorandum and Carlson's psychological history as mitigating evidence. This is clearly a matter of trial strategy, and we cannot say that it was ineffective, even if it's not necessarily as successful as trial counsel intended. Carlson's suggestion that counsel should have also provided the available statistics and outside media is therefore without merit.

{¶ 19} Carlson has not demonstrated that his trial counsel was deficient and that the alleged deficient conduct prejudiced him at sentencing. Accordingly, Carlson's second assignment of error is overruled.

### III. Conclusion

{¶ 20} The trial court did not err in sentencing Carlson pursuant to S.B. 201, the Reagan Tokes Law, pursuant to this court's en banc *Delvallie* decision. Furthermore, the record does not support Carlson's contention that he received ineffective assistance of counsel at sentencing.

{¶ 21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

ANITA LASTER MAYS, A.J., and
MARY EILEEN KILBANE, J., CONCUR


N.B. Administrative Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision. For a full explanation of her analysis, *see State v. Delvallie*, 2022-Ohio-4701, 85 N.E.3d 536 (8th Dist.)(Laster Mays, J., concurring in part and dissenting in part).

Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.