JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Ching Lung Chang ("appellant"), as the Administrator of the Estate of Penny H. Chang, appeals the verdict in favor of defendant-appellee Raina D. Krell, M.S. ("Krell") and defendant-appellee and cross-appellant the Cleveland Clinic Foundation ("CCF"). For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} This appeal arises out of the murder of 15 year old Penny Chang in March of 1999 by Scott Strothers ("Strothers"). In 2000, appellant filed a complaint against CCF and Strothers. In an amended complaint, appellant added Krell and Kimberly Metz, Ph.D. ("Metz") as defendants. The complaint alleged that CCF was negligent in its voluntary inpatient psychiatric treatment and subsequent discharge of Strothers. It further alleged that Krell and Metz were negligent in their outpatient psychotherapeutic counseling of Strothers. The matter proceeded to a jury trial on September 30, 2002. Following opening statements, appellant Metz was dismissed with prejudice. The trial proceeded against CCF, Krell and Strothers. On October 9, 2002, the jury returned a verdict against Strothers, but found in favor of CCF and Krell. It is from this ruling that appellant now appeals, asserting a sole assignment of error for our review. CCF cross appeals, asserting one assignment of error. Appellant's sole assignment of error states:
 {¶ 3} "I. The Trial Court committed prejudicial and reversible error during jury selection."
 {¶ 4} Appellant maintains that the trial court committed prejudicial error by allowing a pediatrician, Dr. Elizabeth Feighan, to remain on the jury following voir dire. Specifically, appellant avers that Dr. Feighan, who is married to a physician, could not set aside her background and experiences as a physician to fairly and impartially decide a case involving a claim by a patient regarding the level of care rendered by a doctor, counselor or psychologist. Appellees maintain that Dr. Feighan stated that she could be fair and impartial, follow the law and instructions given to her by the trial court and, if necessary, render a verdict against CCF and Krell. We agree with the appellees.
 {¶ 5} With regard to removing a prospective juror for cause, the Ohio Supreme Court has stated,
 {¶ 6} "Trial courts have discretion in determining a juror's ability to be impartial. R.C. 2313.42(J) contemplates that `good cause' exists for removal of prospective juror when `he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.' A prospective juror who has been challenged for cause should be excused `if the court has any doubt as to the juror's being entirely unbiased.' However, a `ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary *** so as to constitute an abuse of discretion." [Internal citations omitted.]
 {¶ 7} State v. Nields (2001), 93 Ohio St.3d 6, 35-36. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. The Supreme Court of Ohio has explained this standard as follows:
 {¶ 8} "An abuse of discretion involves far more than a difference in *** opinion ***. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 87.
 {¶ 9} In this case, prior to oral questioning in voir dire, the panel from which jurors were selected was asked to complete a juror questionnaire.[1] Appellant's counsel conducted a follow-up oral inquiry based on Dr. Feighan's responses to the questionnaire. During that inquiry, the following colloquy took place:
 {¶ 10} "[Appellant's counsel]: *** You answered the last question both yes and no, and upon further reflection and what you heard in the courtroom, do you really honestly feel that you could participate in a case like this and be totally fair and objective?
 {¶ 11} "Dr. Feighan: I'd like to think I can but I'm not sure that I can.
 {¶ 12} "[Appellant's counsel]: *** Your sheet indicates that you are familiar with many people that are going to be witnesses in this case. Do you really feel you could be totally fair and objective?
 {¶ 13} "Dr. Feighan: No."
 {¶ 14} (T. 244) Shortly thereafter, appellant's counsel moved to excuse Dr. Feighan for cause, after which the trial court granted the defense's request to further question Dr. Feighan. The transcript reveals that the voir dire of Dr. Feighan was extensive and spanned over forty pages of the transcript. As evidence that the trial court erred, appellant selectively quotes from the transcript Feighan's statement that she did not think she could be fair and impartial. We find, however, that this statement was not an unequivocal statement that Dr. Feighan would be unable to decide the case fairly and impartially, rather it was a response that invited further inquiry. Accord State v. Allard (1996),75 Ohio St.3d 482, 494. Dr. Feighan was later rehabilitated during questioning by defense counsel and the trial judge. The following excerpts from voir dire so demonstrate:
 {¶ 15} "[CCF's counsel]: If the testimony that comes out in court says that the psychiatric care that was given wasn't good, they didn't do the right evaluations, they didn't exercise appropriate judgments, if that's the evidence, could you follow that evidence and could you render a verdict against the psychiatrists at the Cleveland Clinic?
 {¶ 16} "Dr. Feighan: If that's the evidence, I believe I could do that.
 {¶ 17} "[CCF's counsel]: That's what I'm trying to get to whether you can follow the evidence and whether you can follow the law. Do you work with psychologists?
 {¶ 18} "Dr. Feighan: Yes.
 {¶ 19} "[CCF's counsel]: If the evidence is negative on the psychologists, can you follow that and return a verdict in their favor?
 {¶ 20} "Dr. Feighan: Yes.
 {¶ 21} "[CCF's counsel]: So this is a difficult task we're asking you to do but it sounds to me like you believe you can follow the evidence and judge it under the law as the judge gives you.
 {¶ 22} "Dr. Feighan: I can follow the evidence and listen to the facts, but I can't drop my baggage.
 {¶ 23} "[CCF's counsel]: You can't drop what?
 {¶ 24} "Dr. Feighan: I can't drop what I'm bringing in here with me.
 {¶ 25} "The Court: We don't want you to. We want you to bring your life experiences. We want you to bring your common sense. You'll do that, won't you?
 {¶ 26} "Dr. Feighan: Um-hum.
 {¶ 27} "The Court: Why certainly that's what all our jurors are going to do."
 {¶ 28} (T. 247-248). "[Krell's counsel]: *** You would be able to follow the law that the judge instructs you on and render a verdict in accordance with the rules?
 {¶ 29} "Dr. Feighan: Yes. (T. 254).
 {¶ 30} "[Metz's counsel]: *** I guess the bottom line what we're all getting to in this case is that you can listen to the facts and render a verdict that's fair and impartial to both sides?
 {¶ 31} "Dr. Feighan: Yes.
 {¶ 32} "[Metz's counsel]: I'll be very frank. From my side you're a doctor but I don't want you to bend over backwards and be so fair to the plaintiffs that you're being unfair to any of the defendants. You can assure me that you will have a level playing field when this all starts off? Can you do that for me?
 {¶ 33} "Dr. Feighan: Yes.
 {¶ 34} "[Metz's counsel]: *** Can you set aside any sympathy you might feel in this case and render a verdict again that's fair and impartial to both sides?
 {¶ 35} "Dr. Feighan: Yes."
(T. 255-256).
 {¶ 36} "[CCF's counsel]: *** Would you stand up for a patient who had been given less than appropriate care, less than reasonable judgment in someone else's practice?
 {¶ 37} "Dr. Feighan: Stand up for them in what way?
 {¶ 38} "[CCF's counsel]: Stand up and say that's wrong. I think that patient should be compensated. That patient was mistreated, that's not right.
 {¶ 39} "Dr. Feighan: If I felt something was truly done incorrectly, yes.
 {¶ 40} "[CCF's counsel]: And similarly in this case if the evidence persuades you in your conscience, in your heart and your intellect that the Cleveland Clinic or Raina Krell or Kimberly Metz, the people sitting around this table were inappropriate in their approach to Scott Strothers in such a fashion that it resulted in the death of Dr. Chang's daughter Penny, you would not turn the Changs away based on your bias? You would still listen to the evidence and follow the instructions that come from the Court, wouldn't you?
 {¶ 41} "Dr. Feighan: Yes." (T. 275).
 {¶ 42} In addition to the above testimony, Krell's counsel presented hypothetical questions to Dr. Feighan regarding how she might handle similar situations in which one might be inclined to act on a bias. Dr. Feighan answered that she would "absolutely not" act on a bias. Thereafter, a lengthy discussion among counsel and the trial court ensued, during which the trial court carefully considered oral arguments from both sides. The trial judge determined that Dr. Feighan would be fair and impartial as a juror and allowed her to remain. We find that the trial court did not abuse its discretion in making this determination, since Dr. Feighan was rehabilitated and responded that she could fairly and impartially apply the facts of the case to the court's instructions about the law.
 {¶ 43} Appellant next argues that the trial court's decision to excuse Mr. Reep, a venire member, for cause is further evidence of its abuse of discretion in allowing Dr. Feighan to remain on the jury. We disagree.
 {¶ 44} Mr. Reep is a surgical assistant at a hospital associated with University Hospitals. When asked during voir dire whether he was uncomfortable about being a juror, he replied that he was a little uncomfortable because he would be inclined to side with the medical profession. He further revealed that he and his coworkers frequently discuss medical negligence and medical malpractice and stated that he did not think he could be fair and objective as a jury member in this case. Following appellant's counsel's questioning, the trial court conducted its own voir dire to determine Mr. Reep's suitability as a juror. Mr. Reep stated that the reason so many physicians are forced to give up their practice is because of exorbitant damages awarded to plaintiffs. The trial court thereafter inquired further:
 {¶ 45} "The Court: Sometimes I struggle with that kind of an answer. *** I don't understand why you wouldn't be fair if you found that the Clinic did something wrong. You could rule against them, couldn't you?"
 {¶ 46} "Mr. Reep: Yes.
 {¶ 47} "The Court: Or if you felt they didn't do anything wrong, then you would rule favorably to Clinic. *** "
 {¶ 48} "Mr. Reep: Yes.
 {¶ 49} "The Court: In other words, could you decide this case just on the facts of this case and the law which is applicable?
 {¶ 50} "Mr. Reep: Yes, I would do that but in my mind I would be leaning one way rather than the other."
(T. 134-135).
 {¶ 51} Following a short discussion, the court thereafter excused Mr. Reep for cause. The court's decision to excuse Mr. Reep does not evidence an abuse of discretion in allowing Dr. Feighan to remain on the jury. In fact, in this case it seems to evidence just the opposite.
 {¶ 52} The trial court conducted its own voir dire following Reep's answers regarding his tendency to side with the medical profession, just as the trial court did with Dr. Feighan. In deciding to excuse Reep but not Feighan, the trial court demonstrated discretion in determining which venire members would be suited to participate on the jury. Had the trial court excused Feighan simply because she too was a member of the medical profession like Reep, the trial court may have abused its discretion. Instead, the trial court carefully considered Feighan's responses to its questions and questions from appellant's counsel and defense counsel.
 {¶ 53} The Ohio Supreme Court has indicated that the fact that the trial court has the opportunity to observe the demeanor of the prospective juror and evaluate firsthand the sincerity of the responses to questions is of considerable significance in the appellate review of these decisions. Berk v. Matthews (1990),53 Ohio St.3d 161, 169. The trial court was in the best position to observe the sincerity and demeanor and body language of both prospective jurors, Reep and Feighan, to determine their suitability as jurors. Accord State v. Williams (1997),79 Ohio St.3d 1, 8. After conducting extensive inquiries and observing venire members, having decided that one venire member was suitable to serve as a juror and another was not does not constitute an abuse of discretion.
 {¶ 54} Lastly, appellant relies on McGarry v. Horlacher,149 Ohio App.3d 33, 2002-Ohio-3161 for support that Dr. Feighan should have been dismissed. In McGarry, the court of appeals for the second appellate district held that the trial court improperly refused to excuse a juror for cause, forcing the use of a peremptory challenge, causing prejudice to the party and warranting reversal. However, the facts of McGarry are wholly distinguishable from the case at hand. In McGarry, the plaintiff sued her obstetrician/gynecologist for failing to diagnose and treat an abdominal mass. The questionable juror in McGarry was a current patient of the defendant and had been treated by the defendant for an almost identical medical condition. There, the court stated, in relevant part:
 {¶ 55} "We are unpersuaded that Lindsay could have totally put asideher own physician-patient relationship with Horlacher in assessing McGarry's case, especially in light of the fact thatHorlacher had treated her for an abdominal mass. Moreover, it is axiomatic that McGarry was entitled to jurors who were free from personal relationships with Horlacher, and we are somewhat baffled by the trial court's determination not to excuse Lindsayfor cause in light of the information presented during voir direabout her relationship with Horlacher." [Emphasis added.] Id. at 39.
 {¶ 56} It is clear that the McGarry court found that Lindsay should have been excused because of her then current physician-patient relationship with the defendant and because she had been treated by the defendant for an abdominal mass. The facts of the McGarry case bear slight, if any, resemblance to the instant case.
 {¶ 57} In this case, Dr. Feighan is a pediatrician who never specialized in psychiatry or psychology, nor did she have any friends or family members who might have influenced her on these topics. Feighan's practice group admitted newborns to two hospitals with tenuous affiliations to CCF, but otherwise neither Dr. Feighan or her physician husband had any professional association with CCF. Feighan's only relation to the case was that she had previously referred some of her teenage patients suffering from anorexia to the office of Ellen Casper, Ph.D. 
Associates, where Krell worked. However, Feighan had not referred these patients to Krell herself. We find the McGarry case distinguishable from the instant case since none of the unique facts involved in McGarry are present in this case.
 {¶ 58} We cannot say that the trial court abused its discretion in ultimately deciding that Dr. Feighan could fairly and impartially decide the case and remain on the jury.
 {¶ 59} Defendant-appellee's cross appeal is hereby rendered moot. Pangv. Minch (1990), 53 Ohio St.3d 186, paragraph eight of the syllabus.
Judgment affirmed.
Patricia Ann Blackmon, P.J., and Frank D. Celebrezze, Jr., J., Concur.
[1] The content of the juror questionnaire was stricken from the record and is not before this court on appeal because potential jurors were told that the questionnaire was confidential and would be destroyed upon the completion of jury selection.