[Cite as *State v. Spivey*, 2026-Ohio-1550.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 115015 |
| DAVID SPIVEY, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675401-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory M. Paul, Assistant Prosecuting Attorney, *for appellee.*

Kimberly Kendall Corral, *for appellant.*

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant David Spivey ("Spivey") appeals from his convictions for murder and other offenses. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This case arose from the homicides of brothers Dominique King ("Dominique") and Delvont'e King ("Delvont'e"), which occurred on July 30, 2020. On October 24, 2022, a Cuyahoga County Grand Jury indicted Spivey on two counts of aggravated murder in violation of R.C. 2903.01(A); two counts of murder in violation of R.C. 2903.02(A); two counts of murder in violation of R.C. 2903.02(B); two counts of felonious assault in violation of R.C. 2903.11(A)(1); two counts of felonious assault in violation of R.C. 2903.11(A)(2); and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). Apart from the charge of having weapons while under disability, each count carried one- and three-year firearm specifications.

{¶ 3} Spivey pleaded not guilty to all charges, and the case proceeded to a jury trial on November 6, 2023.

{¶ 4} On November 14, 2023, the court declared a mistrial because the jury was unable to reach a unanimous verdict on any of the charges. On December 4, 2023, Spivey filed a motion to dismiss on double-jeopardy grounds. On January 3, 2024, the trial court denied this motion, and Spivey appealed.

{¶ 5} On September 12, 2024, this court affirmed the denial of Spivey's motion to dismiss on double-jeopardy grounds. *State v. Spivey*, 2024-Ohio-4492 (8th Dist.). The case was remanded to the trial court.

{¶ 6} On February 18, 2025, the court granted the State's oral motion to dismiss the having weapons-while-under-disability charge. The remaining counts proceeded to a second jury trial.

{¶ 7} The State called 12 witnesses to testify at trial, including two detectives who worked on the case, Detective Bruce Vowell ("Detective Vowell") and Detective Richard Tusing ("Detective Tusing"). The following is a summary of the evidence presented at trial.

{¶ 8} Dominique and Delvont'e were brothers; Delvont'e lived in a house on Walden Avenue in Cleveland with his mother, his girlfriend, and two other brothers, Devon Foster ("Devon") and Delourence King ("Delourence"). Spivey was a friend of the family and a cousin of one of Dominique's best friends, Zachariah McNair ("McNair"). Devon testified that Spivey was close friends with Dominique, and Devon considered Spivey a "friend slash brother slash cousin" to his family; Devon identified Spivey at trial. (Tr. 697.) According to Devon, in the months leading up to the shooting, Dominique told Devon that he was not on good terms with Spivey, but Devon did not know the reason for this.

{¶ 9} According to Devon, on the evening of July 29, 2020, he and Delvont'e had been together outside of their house smoking marijuana and relaxing. Devon testified that Dominique had gone to a party on St. Clair Avenue in Cleveland, Ohio, with Spivey and McNair to celebrate the life of a friend who had recently passed away.

{¶ 10} At some point in the evening, Dominique and Spivey got into a fight; the record reflects that the fight likely took place at a BP station near Walden Avenue or at the aforementioned party. At 1:03 a.m. on July 30, 2020, Dominique sent a text message to a friend stating, "I had to beat up my little cousin tonight." (Tr. 810.) The text message was sent with a photo appearing to show bloody knuckles; the photo was taken at 9:02 p.m. on July 29. The State also introduced evidence that a swab from Dominique's fingernails contained DNA from Spivey.

{¶ 11} Phone records reflect that at around 12:39 a.m. on July 30, Spivey's cell phone connected with a cell tower located near St. Clair Avenue and East 106th Street when Spivey made an outgoing call to Dominique. Shortly after 1 a.m., Spivey's cell phone connected with a cell tower located on Shaker Boulevard when Dominique made two calls to Spivey. None of these three calls were answered, but law enforcement concluded that based on these records, Spivey was moving closer to the house on Walden Avenue. The FBI agent, who testified as to his historical-record analysis of Spivey's cell phone records in this case, stated Spivey's cell phone was "in the area kind of to the north and west of Walden Avenue" shortly after 1 a.m. on July 30, 2020. (Tr. 486.) The agent further testified that there was a period lasting approximately nine hours following the shooting in which multiple incoming calls were made to Spivey's phone but the phone did not connect to the network. According to the agent, this could have been for a variety of reasons, including that the phone was turned off, ran out of battery, was in airplane mode, or did not have a strong signal.

{¶ 12} Devon testified that at around 1 a.m. on July 30, he left the house to go to a nearby gas station. Around 30 minutes later, while still at the gas station, Devon heard gunshots; shortly thereafter, Delourence came to tell Devon that Delvont'e was dead and Dominique was in the hospital.

{¶ 13} The State introduced video footage from a neighbor who lived across the street from the victims' family on Walden Avenue. The footage showed Dominique drive up in front of his family's home at around 1 a.m. on July 30 in a gray or silver Jeep. Law enforcement subsequently determined that the Jeep was owned by McNair's girlfriend; Devon testified that Dominique had borrowed the Jeep from McNair. Shortly after Dominique parked, Delvont'e came out of the house, Dominique exited the Jeep, and the brothers appeared to be talking.

{¶ 14} Several minutes later — at 1:09 a.m. according to the video's timestamp — two suspects walked into the frame of the video and approached the brothers. One of the suspects — identified by Detective Vowell as Little Dave and later by Devon as Spivey — was wearing a dark hoodie, jeans, and a face mask. The other wore a light-colored t-shirt and appeared taller than the first suspect. The four men talked for several minutes in the front yard of the house. Around 1:18 a.m., the video shows Dominique walking over to the driver's door of the Jeep, removing something from his waistband, and placing it in the car; Detective Vowell testified that he believed this was the handgun that was recovered from under the driver's seat of the Jeep. Devon also testified that he believed that Dominique was putting his gun away.

{¶ 15} Dominique then walked back over to the other men, closely approaching the man identified as Spivey. The two men appeared to engage in a brief physical altercation and then separated. About one minute later, the taller suspect pulled out a gun and shot at both brothers. The video shows Delvont'e collapse in the driveway of the house next door to his; Dominique began to run away and collapsed in the corner of the yard and his family's driveway.

{¶ 16} The State called a neighbor, who testified that he lived on Walden Avenue with his wife. The neighbor testified that on July 30, 2020, around 1:30 or 2 a.m., he was watching television in his second-floor bedroom with his wife and could see the street from where he was in his house. The neighbor testified that he heard a car pull up and heard two car doors close, so he looked out his bedroom window and saw two individuals get out of a light-colored Malibu or Impala and walk up the street. The neighbor continued watching television, and approximately 15 minutes later, he heard gunshots. He testified that he "heard a lot of gunshots" and that it sounded like two different kinds of gunshots because "[o]ne was like pow pow and the other was like boom boom." (Tr. 686.) He testified that as he heard the gunshots, he got up and looked out the window again and could see "the individuals shooting" and then heard a lot of people screaming and saw people running. When asked to describe the suspects, the neighbor stated, "[O]ne was wearing a hoodie, one was wearing a T-shirt. And I ain't going to say both of them was short, but one was shorter than the other." (Tr. 687.) The neighbor testified that he saw the two suspects get back into their car and speed up the street headed

west; he stated that the taller individual was the driver. The neighbor gave a statement to the police when they responded to the scene.

{¶ 17} Law enforcement responded to the scene at around 1:30 a.m. following reports of a shooting. Delvont'e was pronounced dead on the scene, and Dominique was transported to University Hospitals, where he was pronounced dead. The deputy medical examiner who performed the autopsy of each victim testified at trial that Dominique had six gunshot wounds and Delvont'e had nine gunshot wounds; for both victims, the deputy medical examiner concluded that the cause of death was multiple gunshot wounds and the manner of death was homicide.

{¶ 18} Detective Vowell testified that he arrived at the scene around 2:30 a.m. on July 30. He described the scene and narrated the video of the shooting as described above. Detective Vowell testified that he spoke to numerous family members at the scene, but he did not testify specifically as to what, if anything, he learned from particular family members; he described the scene as "dramatic." (Tr. 352.) Detective Vowell testified that later that morning, he obtained a description of the shooting suspects. Vowell testified that he learned there were two black males, both of whom were wearing blue jeans, brown hoodies pulled up over their heads, and N-94 masks on their faces; their faces were largely covered. According to Detective Vowell, a witness described one of the men as around six feet tall and thin and the other man as around five feet six inches; both were carrying black handguns in their right hands. The witness said that the men got into a silver

or gray Chevrolet Impala or Malibu and left the scene and the taller man was the driver.[1]

{¶ 19} Detective Vowell testified that on August 2, 2020, he returned to Walden Avenue to interview the victims' mother. During this interview, Vowell learned that "it was rumored that a male named Little Dave was one of the shooters that night." (Tr. 356.) Detective Vowell could not identify the source of this rumor beyond "the streets[.]" (Tr. 399.) Detective Vowell learned that Little Dave was said to be friends with Dominique and a cousin of McNair, one of Dominique's best friends. Further, he testified that the victims' mother was familiar with Little Dave because he "was always at her house, so she knew who he was." (Tr. 405.) Vowell testified that he learned that at some point earlier in the day or evening prior to the shooting, Little Dave and Dominique had gotten into a fight but he had no other information about this fight.

{¶ 20} Detective Vowell went on to testify that between August 4 and 28, 2020, he attempted to confirm Little Dave's identity. At some point in that period, his partner obtained a palm print from the driver's window of the Jeep and that print was determined to be Spivey's.[2] Detective Vowell further testified that Spivey was approximately five feet eight inches tall and weighed approximately 135 pounds and

---

[1] Detective Vowell did not specify who provided this description. Although there are discrepancies between Detective Vowell's testimony of the witness' description of the suspects and the neighbor's description provided at trial, the neighbor did note a height difference between the suspects and identified the taller suspect as the driver of the vehicle.

[2] At no point in the surveillance footage can either suspect be seen near the driver's door of the Jeep.

this was consistent with the shorter suspect in the surveillance video. He went on to testify that he subsequently returned to the victims' house and spoke with their mother, who identified a photo of Spivey as Little Dave.

{¶ 21} Detective Tusing testified that he was assigned to this case in December 2020, and Spivey had already been identified as a person of interest in the case. According to Detective Tusing, when he received information that Spivey's DNA was present in a sample from Dominique's fingernails, he obtained an arrest warrant for Spivey. He also testified that in February 2023, Ohio State Highway Patrol conducted a traffic stop in which they seized the 9 mm firearm that was used in this shooting. According to Detective Tusing, the two men involved in the traffic stop had no connection to Spivey or to the shooting. He testified that it was not unusual for someone to get rid of a firearm used in a homicide quickly and that given the time that had elapsed since the shooting, it was possible that the firearm had changed hands multiple times.

{¶ 22} The State called Thomas Morgan ("Morgan"), who testified that he was employed as the supervisor of the firearm and toolmark unit at the Cuyahoga County Medical Examiner's Office. Morgan testified that he received evidence, analyzed the evidence, and prepared a report in connection with this case. Specifically, Morgan analyzed a 9 mm Luger caliber Glock pistol, a 9 mm Luger caliber Ruger pistol, various bullets and bullet fragments retrieved from the victims' bodies, and spent shell casings. Morgan testified that he tested both firearms for operability and to recover test bullets and test cartridge cases for later comparison

into the National Integrated Ballistic Information Network ("NIBIN") system. (Tr. 553.) As a result of his testing and analysis, Morgan concluded that all 21 of the 9 mm Luger cartridge casings recovered from the crime scene were fired from the Glock pistol. (Tr. 554.) Similarly, Morgan concluded that 12 of the 14 bullet fragments recovered from the bodies of both victims came from this firearm; the remaining two could not be classified. (Tr. 563.) With respect to the four .40 caliber Smith & Wesson cartridge casings recovered from the crime scene, Morgan concluded that they were discharged by an unknown/unidentified .40 caliber Smith & Wesson firearm. Further, Morgan concluded that the Ruger pistol he analyzed was not responsible for any of the 9 mm shell casings recovered from the scene.

{¶ 23} The State called Detective Tony Gonzalez ("Detective Gonzalez") who testified that he was employed by the Cleveland Division of Police and assigned to the U.S. Marshals Northern Ohio Violent Fugitive Task Force. Detective Gonzalez testified that in September 2021, he received an assignment to locate Spivey in connection with this case. He testified that he initially determined that Spivey might be in Dayton, Ohio, based on a traffic citation and accident report in which Spivey reported that a .40 caliber firearm was stolen from him out of his girlfriend's vehicle, a silver Chevrolet Malibu. Detective Gonzalez testified that he also attempted to locate Spivey at his uncle's house in Garfield Heights, Ohio.

{¶ 24} Ultimately, Detective Gonzalez determined that Spivey was in Houston, Texas with his girlfriend. Detective Gonzalez communicated with agents in Houston, who apprehended Spivey in October 2022.

{¶ 25} At the close of the State's case in which the foregoing evidence was presented, Spivey made a Crim.R. 29 motion; the court denied this motion.

{¶ 26} The jury began deliberations on February 24, 2025. On February 25, 2025, the court received a note from the jury, signed by all 12 jurors, indicating that it could not reach a unanimous verdict. The same day, the jury's foreperson also informed the court's bailiff that they were concerned about one of the other members of the jury. The court questioned the foreperson, who reported to the court that they believed one juror may be "operating under a bias" and specifically stated:

> Well, unanimously we've all come to a decision except for this one person, who in their statements while they're deliberating, that basically said regarding their life experiences that they will not take evidence into consideration.

(Tr. 935-936.) The court, with the agreement of both parties, instructed the jury to continue deliberations pursuant to *State v. Howard*, 42 Ohio St.3d 18 (1989).

{¶ 27} On February 26, 2025, the jury returned a verdict of not guilty of both counts of aggravated murder and guilty of all remaining counts of murder and felonious assault with the attendant firearm specifications.

{¶ 28} On March 12, 2025, the court held a sentencing hearing. The parties agreed that all four counts related to Dominique were allied offenses of similar import and all four counts related to Delvont'e were allied offenses of similar import; the State elected to have Spivey sentenced on the two counts of murder in violation of R.C. 2903.02(A). The victims' mother, grandmother, aunt, and friend addressed the court; the assistant prosecuting attorney and defense counsel both addressed the court as well.

{¶ 29} The court sentenced Spivey to 15 years to life in prison, to be served consecutively to six years on the firearm specifications, with parole eligibility after 21 years.

{¶ 30} Spivey appealed. He now raises eight assignments of error for our review:

> I. The admission of prejudicial hearsay identification testimony by Detective Vowell which violated Spivey's Sixth Amendment right to confrontation and Ohio's rules of evidence was (a) plain error and (b) ineffective assistance of counsel.
>
> II. The admission of Detective Vowell's testimony about the identification of the appellant in surveillance footage was (a) plain error and (b) ineffective assistance of counsel.
>
> III. The admission of irrelevant and overly prejudicial palm print evidence was (a) plain error and (b) ineffective assistance of counsel.
>
> IV. The admission of evidence of weapons which were irrelevant and overly prejudicial was (a) plain error and (b) ineffective assistance of counsel.
>
> V. Admission of Devon Foster's testimony, who was not a witness to the crime and had no firsthand knowledge of the crime was (a) plain error and (b) ineffective assistance of counsel.
>
> VI. Admission of video [surveillance] footage to be admitted that had not [been] authenticated was (a) plain error and (b) ineffective assistance of counsel.
>
> VII. Appellant Spivey's [convictions] are against the manifest weight of the evidence.
>
> VIII. The trial court abused its discretion when it took no steps to [safeguard] appellant's rights after a report of juror bias during deliberations.

**Law and Analysis**

{¶ 31} Spivey's first six assignments of error all challenge the trial court's admission of various forms of evidence, arguing that the admission constituted both plain error and ineffective assistance of counsel. Generally, a decision regarding the

admission of evidence will not be overturned absent an abuse of discretion. *State v. Payne*, 2019-Ohio-4158, ¶ 38 (8th Dist.). An abuse of discretion is defined as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. However, because all the evidence challenged in Spivey's first six assignments of error was admitted without objection at trial, he has forfeited all but plain error. *State v. McInnes*, 2026-Ohio-734, ¶ 61 (8th Dist.), citing *State v. Rogers*, 2015-Ohio-2459, ¶ 3 and 21 (Failure to object to an error in the trial court forfeits all but plain error on appeal.).

{¶ 32} Crim.R. 52(B) authorizes appellate courts to recognize and correct ""plain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court.'" *Id.* at ¶ 62, quoting *State v. Mosby*, 2024-Ohio-5210, ¶ 24 (8th Dist.), quoting Crim.R. 52(B). "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *State v. Bailey*, 2022-Ohio-4407, ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus ("Notice of plain error. . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice."). To prevail under the plain-error doctrine, Spivey "must establish that 'an error occurred, that the error was obvious, and that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the

outcome of the trial.'" (Emphasis added in *Rogers*.) *Id.*, quoting *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶ 33} Spivey acknowledges that his counsel failed to object to the evidence he now challenges on appeal. He separately argues that this constituted ineffective assistance of counsel. To establish ineffective assistance of counsel, "a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Houston*, 2018-Ohio-3043, ¶ 18 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668 (1984). "'Defense counsel's performance must fall below an objective standard of reasonableness to be deficient for purposes of ineffective assistance of counsel.'" *State v. Linville*, 2017-Ohio-101, ¶ 6 (8th Dist.), quoting *State v. Jones*, 2016-Ohio-688, ¶ 14 (8th Dist.). Because objecting is a tactical decision, "'"the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel."'" *State v. Washington*, 2024-Ohio-1056, ¶ 38, quoting *State v. Frierson*, 2018-Ohio-391, ¶ 25 (8th Dist.), quoting *State v. Conway*, 2006-Ohio-2815, ¶ 103.

{¶ 34} Having laid out the relevant standards of review guiding our analysis, we will address each of Spivey's first six assignments of error in turn.

## I. Detective Vowell's Testimony — Suspect Description

{¶ 35} In Spivey's first assignment of error, he argues that the admission of prejudicial hearsay identification testimony by Detective Vowell violated both Spivey's Sixth Amendment right to confrontation and Ohio's rules of evidence and,

therefore, constituted plain error. Relatedly, he argues that his counsel's failure to object to this testimony constituted ineffective assistance of counsel.

{¶ 36} The specific testimony that Spivey challenges in this assignment of error is Detective Vowell's testimony that someone known as Little Dave was the shooter and, further, that an unknown witness described the suspects as having hoodies pulled over their faces, with both carrying guns, and one was about six feet tall while the other was about five feet six inches tall. Specifically, Spivey argues that Detective Vowell's entire investigation of Spivey was based on a rumor and he was unable to testify as to the source of this rumor. The only other witness who claimed to have seen the suspects was the neighbor who testified; while the descriptions contained similarities, the record does not explicitly reflect that Detective Vowell's description came from the neighbor.

{¶ 37} Spivey argues that the admission of this testimony constitutes plain error for two reasons. Spivey argues that the testimony was inadmissible hearsay and that it violated his Sixth Amendment right to confrontation because he was unable to confront the witness who provided this description of the suspects. "The Sixth Amendment to the United States Constitution protects the right of a criminal defendant 'to be confronted with the witnesses against him' [and] [t]he 'primary object' of this provision is to prevent unchallenged testimony from being used to convict an accused . . . ." *State v. Carter*, 2024-Ohio-1247, ¶ 27, quoting *Mattox v. United States*, 156 U.S. 237, 242 (1895), and *Crawford v. Washington*, 541 U.S. 36, 42, 53-54 (2004). Neither argument is persuasive.

{¶ 38} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). While Detective Vowell testified as to an unidentified witness's description of the suspects, "'Ohio courts have long held that out-of-court statements are admissible to explain the actions of a police officer during an investigation and are not hearsay.'" *State v. Perkins*, 2020-Ohio-3658, ¶ 13 (8th Dist.), quoting *State v. Johnson*, 2018-Ohio-1389, ¶ 44 (8th Dist.), citing *State v. Davis*, 2008-Ohio-2; *see also State v. Carter*, 2017-Ohio-5573, ¶ 47 (8th Dist.), quoting *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist. 1987) ("'[W]here statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay.'").

{¶ 39} Spivey cites two cases from the Second District to support his assertion that "rumors" are inadmissible hearsay: *State v. Bridgeman*, 2009-Ohio-4578, ¶ 20 (2d Dist.), and *State v. Sinkfield,* 1998 Ohio App. LEXIS 4644, *16-17 (2d Dist. Oct. 2, 1998). In *Bridgeman*, the court held that a detective's testimony regarding an anonymous phone tip was prejudicial hearsay largely because the "State did not present overwhelming evidence of [the defendant's] guilt" in that case. *Bridgeman* at ¶ 20. In *Sinkfield*, the court held that testimony regarding an anonymous tip was prejudicial hearsay because the probative value of that evidence was substantially outweighed by the danger of unfair prejudice, and moreover, the testimony was unnecessary because it had already been established that the defendant was a suspect. *Sinkfield* at *16-17.

{¶ 40} We find neither case persuasive. Unlike *Bridgeman*, and despite Spivey's arguments in this appeal, the State presented additional evidence linking Spivey to the shooting. The assertion that the State's entire case was based on a "rumor" is a mischaracterization of the record. Moreover, unlike in *Sinkfield*, Detective Vowell's testimony regarding the initial description of the suspects that he obtained was relevant in explaining the steps he took in his investigation that led to identifying Spivey as a suspect.

{¶ 41} The testimony as to "rumors" that Little Dave was involved, as well as Detective Vowell's initial description of the suspects, was introduced to explain how, in the course of the investigation, Spivey was eventually identified as a person of interest. Moreover, the State introduced video evidence at trial showing both suspects; this renders any testimony as to the suspects' build or clothing harmless given the jury's ability to view the suspects.

{¶ 42} Because the testimony was not inadmissible hearsay and did not violate Spivey's right to confrontation, we cannot say that the admission of this testimony constituted plain error.

{¶ 43} With respect to Spivey's ineffective-assistance-of-counsel argument, he is unable to satisfy either prong of the *Strickland* test. First, because the testimony was admissible as discussed above, we cannot say that counsel's failure to object fell below an objective standard of reasonableness required to satisfy the first prong of the *Strickland* test. Second, "the failure of counsel to perform what may reasonably be deemed a futile act cannot serve as the basis for ineffective assistance

of counsel claims nor could the failure be deemed prejudicial." *State v. Freeman*, 2023-Ohio-3150, ¶ 49 (8th Dist.), citing *State v. Ford*, 2007-Ohio-5722, ¶ 9 (8th Dist.), citing *State v. Henderson*, 2007-Ohio-2372 (8th Dist.). Because objecting to admissible testimony can reasonably be deemed a futile act, Spivey is unable to show prejudice. For these reasons, Spivey's first assignment of error is overruled.

## II. Detective Vowell's Testimony — Identification

{¶ 44} In Spivey's second assignment of error, he argues that the admission of Detective Vowell's testimony regarding the identification of Spivey in the surveillance footage was plain error and that his counsel's failure to object to this testimony constituted ineffective assistance of counsel. In this assignment of error, Spivey challenges Detective Vowell's repeated references to the shorter suspect in the video as Little Dave without any foundation for him to make such an identification.

{¶ 45} During the State's direct examination of Detective Vowell, he testified as to his investigation as described above, including the descriptions of the suspects and how Spivey became a suspect in the case. Following that testimony, the State played the surveillance footage during its direct examination of Detective Vowell and the detective narrated the video, identifying both victims by name and describing the suspects as "the shorter male" and "the taller male." (Tr. 362-363.) The following exchange then took place:

> ASSISTANT PROSECUTING ATTORNEY: And as you're observing this [video] on August 3rd of 2020, based on the information that you had gathered and the descriptions, who did you believe the little shorter male to be?

DETECTIVE VOWELL: Little Dave.

ASSISTANT PROSECUTING ATTORNEY: Without a first and last name?

DETECTIVE VOWELL: Without a first and last name.

(Tr. 363.) Throughout the remainder of Detective Vowell's direct examination, he continued to refer to the shorter suspect seen in the video as Little Dave.

{¶ 46} Spivey argues that because the identity of the suspects in the video cannot be determined, testimony from an experienced detective affirmatively identifying one of the suspects was highly prejudicial. Specifically, Spivey argues that the identification of the suspect as Little Dave constituted opinion testimony from a law enforcement officer about the guilt of a defendant and was, therefore, inadmissible pursuant to Evid.R. 701. Spivey points to this court's opinion in *State v. Brunson*, 2020-Ohio-5078, ¶ 35 (8th Dist.), in which we concluded that a detective's identification of a suspect in surveillance footage as Brunson was improper opinion testimony. The *Brunson* Court ultimately concluded that the testimony was harmless error because the record reflected overwhelming evidence of Brunson's guilt, including cell phone location data and DNA evidence similar to the evidence presented in the instant case. *Id*. at ¶ 37.

{¶ 47} Spivey is correct that beyond the initial reference to the suspect in the video as Little Dave, Detective Vowell affirmatively identified the suspect as Little Dave during his testimony. However, viewing the testimony in its entirety, the context for the testimony is that it was based on Detective Vowell's perception of the evidence given his investigation. Even if we agreed with Spivey that Detective Vowell's identification testimony was improper, we cannot say that the admission of

this testimony constituted plain error. While the testimony, in isolation, may have been prejudicial, upon a thorough review of the record, we cannot conclude that this was error, let alone plain error that likely affected the outcome of the trial. The jury was able to view the video itself, to hear the other witness testimony describing the circumstances surrounding the shooting, to hear testimony from Devon identifying Spivey and describing Spivey's relationship with Dominique, and to consider the cell phone and DNA evidence implicating Spivey. For these reasons, Spivey has not satisfied his burden of establishing that Detective Vowell's testimony constituted plain error such that reversal is required to correct a manifest miscarriage of justice.

{¶ 48} With respect to Spivey's ineffective-assistance-of-counsel argument, we likewise find that Spivey has not satisfied the second prong of the *Strickland* test because he is unable to show that but for his counsel's failure to object to Detective Vowell's testimony, the outcome of the trial would have been different. Because this testimony did not constitute plain error and his counsel's failure to object did not constitute ineffective assistance of counsel, Spivey's second assignment of error is overruled.

### III. Palm-Print Evidence

{¶ 49} In Spivey's third assignment of error, he argues that the admission of Detective Vowell's testimony regarding the palm-print evidence taken from the door of the Jeep was highly prejudicial and constituted plain error and that his counsel's failure to object to this testimony constituted ineffective assistance of counsel. Specifically, Spivey argues that because there is no evidence that either of the

shooting suspects went anywhere near the door of the Jeep, the palm-print evidence is irrelevant and therefore inadmissible pursuant to Evid.R. 702.

{¶ 50} "Evidence is relevant if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Hartman*, 2020-Ohio-4440, ¶ 24, quoting Evid.R. 401.

{¶ 51} Spivey is correct that the entirety of the shooting was captured on video and presented at trial, and this video does not show either suspect approach or touch the part of the Jeep where the palm print was found. However, the main issue for the factfinder to determine at trial was the identity of the suspects. Further, the record reflects that Dominique got into a physical fight hours before the shooting took place. Therefore, it is not unreasonable to conclude that the fact that Spivey's palm print was on the Jeep tended to make the fact that Spivey got into a fight with one of the victims hours before the shooting more probable.

{¶ 52} Moreover, even if we were to conclude that this evidence was irrelevant and therefore inadmissible, we cannot conclude that the admission of the evidence constituted plain error. Our review of the record reveals additional evidence that Spivey was one of the suspects. Moreover, the record reflects that Spivey's arguments against the admission of this evidence — that neither suspect is shown touching the door in the surveillance footage and that the presence of Spivey's print on the Jeep door could be explained by his relationship with Dominique and with the vehicle's owner — were presented to the jury at trial. Thus, it cannot be said

that there is a reasonable probability that the admission of this evidence resulted in prejudice.

{¶ 53} With respect to Spivey's ineffective-assistance-of-counsel argument, we reiterate our reasoning from Spivey's first and second assignments of error. Spivey is unable to satisfy either prong of the *Strickland* test. Because the admission of the palm-print evidence was not plain error and the failure to object to this evidence did not constitute ineffective assistance of counsel, we overrule Spivey's third assignment of error.

## IV. Firearm Evidence

{¶ 54} In Spivey's fourth assignment of error, he argues that Detective Gonzalez's testimony that he had determined Spivey was living in Dayton because he received an accident report in which Spivey reported that a .40 caliber firearm had been taken from his girlfriend's vehicle was prejudicial. Spivey argues that this was irrelevant weapons evidence that amounted to prejudicial error requiring reversal because it created an inference that Spivey was dangerous and that the stolen firearm could have been used in the shooting. Spivey argues that the admission of this evidence was plain error and the failure to object to the evidence amounted to ineffective assistance of counsel. We disagree.

{¶ 55} The admission of Detective Gonzalez's testimony was not plain error. Detective Gonzalez's testimony was introduced to explain why his investigation led him to try to locate Spivey in Dayton, Ohio; such evidence is admissible to explain law enforcement's conduct during an investigation. Moreover, considering the

other evidence admitted at trial, we cannot conclude that the admission of Detective Gonzalez's testimony that Spivey reported a firearm stolen was prejudicial error.

{¶ 56} We reiterate that because the admission of this evidence was not plain error, counsel's claimed failure to object to this evidence was not deficient and therefore did not constitute ineffective assistance of counsel. For these reasons, Spivey's fourth assignment of error is overruled.

## V. Devon's Testimony

{¶ 57} In Spivey's fifth assignment of error, he argues that the entirety of Devon's testimony violated Evid.R. 602 because Devon lacked personal knowledge on which to base his testimony. Specifically, Spivey argues that because Devon did not witness the shooting, he lacked personal knowledge to narrate the surveillance footage. For this reason, Spivey argues that the admission of Devon's testimony was plain error and his counsel's failure to object to the testimony constituted ineffective assistance of counsel.

{¶ 58} Evid.R. 602 provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The rule goes on to state that evidence to prove personal knowledge "may, but need not, consist of the witness' own testimony." Further, the personal knowledge requirement may be satisfied where a witness bases their testimony "'partly upon firsthand knowledge and partly upon the accounts of others[.]'" *Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 1997-Ohio-327, ¶ 12, quoting McCormick, *Evidence*, at 40 (4th Ed. 1992).

{¶ 59} A witness may have personal knowledge of video evidence even if they did not make or appear in the video. *State v. Groce*, 2019-Ohio-1007, ¶ 46-47 (10th Dist.), *rev'd on other grounds*, 2020-Ohio-6671. Here, although Devon did not make or appear in the surveillance video, the record reflects that he lived in the house depicted in the video and was familiar with three of the four individuals shown in the video. Spivey argues that it was impermissible for Devon to identify Spivey in the video even though neither suspect's face is clearly discernible in the video. While Spivey is correct that the video does not clearly depict either suspect, this issue was fully developed during defense counsel's cross-examination of Devon at trial. Further, the jury was able to view the video during trial and reach its own conclusions about the activities and individuals it saw depicted therein.

{¶ 60} Because our review of the record reflects that Devon's testimony was largely based on his personal knowledge, we cannot conclude that Spivey has satisfied the high burden of establishing that the admission of this testimony constituted plain error requiring reversal.

{¶ 61} Further, Spivey has not satisfied either prong of the *Strickland* test with respect to Devon's testimony. We reiterate that the failure to object, on its own, is not necessarily deficient performance sufficient to satisfy the first prong of the *Strickland* test. "Generally, trial counsel's tactical decisions and strategies, even if 'debatable,' do not constitute ineffective assistance of counsel." *State v. Harris*, 2022-Ohio-4630, ¶ 50 (8th Dist.), citing *State v. Scarton*, 2020-Ohio-2952, ¶ 90 (8th Dist.). Further, because we are required to give great deference to counsel's

performance, we """"will ordinarily refrain from second-guessing strategic decisions counsel [makes] at trial."""" *Id.*, quoting *Scarton,* quoting *State v. Myers*, 2002-Ohio-6658, ¶ 152. Thus, although Spivey now argues that there was "no strategic benefit" in not objecting to Devon's testimony, we decline to second-guess trial counsel's decision not to object to the testimony of the victims' brother.

{¶ 62} Because the admission of Devon's testimony was not plain error and the failure to object to the testimony was not ineffective assistance of counsel, we overrule Spivey's fifth assignment of error.

## VI. Surveillance Footage

{¶ 63} In Spivey's sixth assignment of error, he argues that the surveillance footage introduced at trial was not properly authenticated as required by Evid.R. 901. We disagree.

{¶ 64} Evid.R. 901 provides that authentication or identification is a condition precedent to admissibility that is "satisfied by evidence sufficient to support that the matter in question is what its proponent claims." Evid.R. 901(A). """"The authentication requirement is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be."""" *State v. Ladson*, 2022-Ohio-3670, ¶ 20 (8th Dist.), quoting *State v. Heard*, 2022-Ohio-2266, ¶ 31 (8th Dist.), quoting *State v. Toudle*, 2013-Ohio-1548, ¶ 21 (8th Dist.), citing *Yasinow v. Yasinow*, 2006-Ohio-1355, ¶ 81 (8th Dist.). Further, "[v]ideo . . . evidence may be admissible under one of two theories: the 'pictorial testimony'

theory or the 'silent witness' theory." *Id.* at ¶ 21, citing *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aero. & Agricultural Implement Workers, Local 486*, 61 Ohio St.3d 121, 129 (1991). "Under the silent witness theory, the evidence is a '"silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness,' and the evidence may be admitted 'upon a sufficient showing of the reliability of the process or system that produced the evidence.'" *Id.*, quoting *Midland* at 129. For example, a detective testifying that he obtained surveillance footage from a crime scene and further testifying that the footage accurately reflected the scene is sufficient to properly authenticate video evidence. *Id.* at ¶ 22, citing *State v. Freeze*, 2012-Ohio-5840, ¶ 68 (12th Dist.).

{¶ 65} Here, Detective Vowell testified that he obtained the neighbor's surveillance footage as part of the initial investigation in the case. He further testified, as did other witnesses, that the surveillance footage accurately captured the crime scene. Detective Vowell and other responding law enforcement testified as to the crime scene as they saw it immediately following the shooting, and Devon testified as to the crime scene shortly before and after the shooting. This testimony is sufficient to have properly authenticated the video evidence.

{¶ 66} Although Spivey's statement of his assignments of error refers to an ineffective-assistance-of-counsel argument related to the surveillance footage, this argument is not included elsewhere in Spivey's appellate brief. Therefore, pursuant to App.R. 12 and 16, we decline to address this argument. *Kaba v. Cuyahoga Cty. Treasurer of Ohio*, 2026-Ohio-355, ¶ 15 (8th Dist.) ("An appellate court may

disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A).").

{¶ 67} Spivey's sixth assignment of error is overruled.

## VII. Manifest Weight of the Evidence

{¶ 68} In Spivey's seventh assignment of error, he argues that his convictions are against the manifest weight of the evidence. Specifically, he asserts that the State's case was built on "low-quality" evidence and heavily dependent on a rumor from an unknown source.

{¶ 69} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "'A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which evidence weighs heavily against conviction."'" *State v. Travis*, 2022-Ohio-1233, ¶ 28 (8th Dist.), quoting *State v. Crenshaw*, 2020-Ohio-4922, ¶ 243 (8th Dist.), quoting *Thompkins* at ¶ 25.

{¶ 70} The entirety of Spivey's argument in support of this assignment of error is a reiteration of his arguments in support of the foregoing six assignments of error. "'App.R. 16 requires a party to separately argue each assignment of error[, and] [p]ursuant to App.R. 12(A)(2), an appellate court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate

argument.'" *Cleveland v. Taylor*, 2021-Ohio-584, ¶ 87 (8th Dist.), quoting *State v. Wells*, 2013-Ohio-3722, ¶ 55 (8th Dist.). Because Spivey has failed to separately argue this assignment of error, we disregard his seventh assignment of error.

## VIII. Juror Bias

{¶ 71} In Spivey's eighth and final assignment of error, he argues that the trial court abused its discretion when it took no steps to safeguard Spivey's rights after the foreperson of the jury reported that another juror exhibited bias during deliberations. Spivey argues that the existence of juror bias requires reversal. We disagree.

{¶ 72} "The determination of whether a juror is impartial or biased involves a judgment of credibility, which may not be apparent from the record on appeal." *Hunt v. E. Cleveland*, 2019-Ohio-1115, ¶ 37 (8th Dist.). Therefore, appellate courts generally defer to the trial judge who sees and hears the juror because trial courts have discretion in determining a juror's ability to be impartial. *Id.*, citing *Chang v. Cleveland Clinic Found.*, 2003-Ohio-6167, ¶ 6 (8th Dist.).

{¶ 73} Further, we note that defense counsel did not object to how the trial court handled the alleged issue during deliberations. On the contrary, the record reflects that the court discussed the issue with both parties at length both before and after inquiring about the issue to the foreperson and all parties agreed as to how the trial court should handle the situation.

{¶ 74} The record reflects that in the context of the jury being unable to reach a unanimous verdict after a brief period of deliberations, the foreperson reported to

the court that one other member of the jury may be biased and did not appear to be taking deliberations very seriously. Upon further inquiry, the foreperson stated that the juror did not want to employ an analogy used by the State during voir dire regarding circumstantial evidence. The foreperson went on to state that all jurors, including this particular juror, were being civil and engaged in deliberation, and the foreperson believed that with further deliberations, the jury might be able to reach a verdict.

{¶ 75} Based on our review of the record, the trial court did not abuse its discretion by failing to separately inquire of a juror in this situation. Spivey's eighth assignment of error is overruled.

{¶ 76} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

LISA B. FORBES, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR